JOSEPH CECE *v.* FELIX INDUSTRIES, INC., ET AL.
(SC 16041)

Callahan, C. J., and Norcott, Katz, Palmer and Peters, Js.

Argued March 16—officially released April 27, 1999

458

*Lucas D. Strunk,* with whom, on the brief, was *Jason M. Dodge,* for the appellants (named defendant et al.).

*Gregory T. D'Auria,* assistant attorney general, with whom were *William J. McCullough,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, and *Carolyn K. Querijero* and *Anthony A. Jannotta,* assistant attorneys general, for the appellee (defendant second injury fund).

*Opinion*

PETERS, J. This case concerns the constitutionality of General Statutes § 31-349, as it incorporates Public Acts 1995, No. 95-277 (P.A. 95-277),[1] which sharply limits the future liability of the second injury fund to pay

---

[1] General Statutes § 31-349, as it incorporates P.A. 95-277, provides in relevant part: "(a) The fact that an employee has suffered a previous disability, shall not preclude him from compensation for a second injury, nor preclude compensation for death resulting from the second injury. If an employee having a previous disability incurs a second disability from a second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second injury alone, he shall receive compensation for (1) the entire amount of disability, including total disability, less any compensation payable or paid with respect to the previous disability, and (2) necessary medical care, as provided in this chapter, notwithstanding the fact that part of the disability was due to a previous disability. For purposes of this subsection, 'compensation payable or paid with respect to the previous disability' includes compensation payable or paid pursuant to the provisions of this chapter, as well as any other compensation payable or paid in connection with the previous disability, regardless of the source of such compensation.

workers' compensation benefits to workers injured before the effective date of the public act. Although the constitutional challenges to the validity of the statute are grounded in both the contracts clause[2] and the due process clause of the United States constitution,[3] resolution of these challenges turns on one critical issue. That issue is whether, in its initial enactment of the legislation establishing the second injury fund, the legislature entered into a contract with employees, employers and insurers in this state. We conclude that the presence of such a contractual relationship has not been established under the circumstances of the present case.

The parties submitted a stipulation of facts. The claimant, Joseph Cece, became entitled to workers' compensation because of an injury to his neck caused by a fall that occurred on January 16, 1992, in the course of his employment by the named respondent, Felix

---

"(b) As a condition precedent to the liability of the Second Injury Fund, the employer or its insurer shall: (1) Notify the custodian of the fund by certified mail no later than three calendar years after the date of injury or no later than ninety days after completion of payments for the first one hundred and four weeks of disability, whichever is earlier, of its intent to transfer liability for the claim to the Second Injury Fund . . . .

"(d) Notwithstanding the provisions of this section, no injury which occurs on or after July 1, 1995, shall serve as a basis for transfer of a claim to the Second Injury Fund under this section. All such claims shall remain the responsibility of the employer or its insurer under the provisions of this section.

"(e) All claims for transfer of injuries for which the fund has been notified prior to July 1, 1995, shall be deemed withdrawn with prejudice, unless the employer or its insurer notifies the custodian of the fund by certified mail prior to October 1, 1995, of its intention to pursue transfer pursuant to the provisions of this section. . . ."

[2] Article one, § 10, cl. 1, of the United States constitution provides in relevant part: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."

[3] The fifth amendment to the United States constitution provides in relevant part: "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." The fifth amendment is binding on the states as a result of the fourteenth amendment.

Industries, Inc. (employer). Cece's injury allegedly was exacerbated by a preexisting multi-level degenerative condition.[4] Cece's employer and the employer's insurer, CNA Insurance Company (insurer), accepted liability for the injury and entered into a voluntary agreement to pay specified benefits to Cece. Their agreement was approved by the workers' compensation commissioner on April 27, 1993.

Relying on Cece's preexisting medical condition, the respondents, the employer and the insurer, sought to transfer to the second injury fund, also a respondent, liability for partial payment of Cece's workers' compensation benefits. On February 15, 1993, in accordance with the terms of § 31-349[5] then in effect, the respondents gave proper notice to the second injury fund of the claim to transfer.

In 1995, the legislature revised § 31-349 to preclude the transfer to the second injury fund of any claims for new work-related injuries. See General Statutes § 31-349 (d). For injuries previously noticed, the revised statute requires a new notice to the second injury fund "by certified mail prior to October 1, 1995 . . . ." General Statutes § 31-349 (e). The respondents failed to renotify the second injury fund of their claim for transfer

---

[4] The second injury fund does not concede that Cece's injury qualifies, on medical grounds, for transfer to the fund.

[5] Like the present § 31-349 (a), General Statutes (Rev. to 1993) § 31-349 (a) imposed liability on the second injury fund for "a second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second injury alone . . . ." See *Williams* v. *Best Cleaners, Inc.*, 237 Conn. 490, 496–501, 677 A.2d 1356 (1996).

General Statutes (Rev. to 1993) § 31-349 (b) contained only two conditions precedent to transfer of liability to the fund. One was that "the employer or his insurance carrier shall, ninety days before the expiration of the first one hundred four weeks of disability . . . furnish to the custodian [of the second injury fund] a copy of the agreement or award together with all information supporting his claim as to the liability of the second injury fund . . . ." The other was that the employer or his insurance carrier were

of the liability for Cece's injury. They did, however, fulfill their obligation to pay benefits to Cece for 104 weeks antecedent to transfer. Those payments ceased on December 10, 1995.

On these undisputed facts, the workers' compensation trial commissioner upheld the respondents' claim that the second injury fund was liable for payment of benefits to Cece. In the commissioner's view, the initial notice to the second injury fund was sufficient to transfer liability to that fund because the subsequent changes in § 31-349 had no retroactive effect.

In response to a petition for review filed by the second injury fund, the compensation review board (board) reversed the decision of the trial commissioner and dismissed the respondents' claim for transfer. The board observed that the re-notification provision in § 31-349 (e) as revised could not be construed as having only a prospective effect because, for the future, the revised statute precluded all transfers to the second injury fund. Relying on the analysis in *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 304–305, 695 A.2d 1051 (1997), the board held that the provision for re-notification would be meaningless unless it were held to operate retroactively. The board declined, on jurisdictional grounds, to address the respondents' claims that the re-notification provision, if applied retroactively, violated the respondents' constitutional rights.

In their appeal to this court,[6] the respondents do not challenge the board's decision that the revised § 31-349 (e) applies to their request to transfer liability for Cece's injury to the second injury fund. They represent, however, that transfer requests often are triggered by

required to provide notice, to the custodian, of payment of benefits for the first 104 weeks.

[6] The respondents appealed to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

employee claims for further disability benefits for injuries that occur long after the original notice to the employer, the insurer and the second injury fund. In their view, such legitimate subsequent claims make it impracticable for them to avail themselves of the re-notification requirement of the revised § 31-349, codified as § 31-349 (e). In effect, they argue, the revised statute deprives them of the opportunity to transfer legitimate claims for disability benefits to the second injury fund, and thus deprives them of a defense to the payment of disability claims. Consequently, they maintain that the re-notification provision is unconstitutional because it violates both the contract clause and the due process clause of the United States constitution.[7]

The second injury fund argues, to the contrary, that the statutory rights created by the terms of § 31-349 before its 1995 revision do not support any contractual claims against the fund. In the fund's view, although the workers' compensation act creates a contract between employees and their employers and the employers' insurers, the fund is not a party to that contract. According to the fund, because its obligations are statutory rather than contractual, those obligations are merely statements of legislative policy subject to revision by subsequent legislatures. We agree with the fund and, therefore, affirm the decision of the compensation review board.

I

The second injury fund was established by the legislature in 1945 to encourage employers to hire potential

---

[7] The respondents refer, in passing, to comparable provisions in the Connecticut constitution, but they advance no reasoned argument that the Connecticut constitution affords them rights that are greater than those afforded by the United States constitution. For this reason, we decline to consider any possible rights that the respondents might have under the state constitution.

employees with preexisting disabilities or injuries. To provide an economic incentive for such employment, the second injury fund provided resources to limit the direct exposure of employers and their insurers to 104 weeks of workers' compensation payments for injuries exacerbated by the employee's preexisting condition. See *Davis* v. *Norwich*, 232 Conn. 311, 318–21, 654 A.2d 1221 (1995); *Civardi* v. *Norwich*, 231 Conn. 287, 293–94, 649 A.2d 523 (1994); *Hernandez* v. *Gerber Group*, 222 Conn. 78, 82, 608 A.2d 87 (1992). Pursuant to General Statutes § 31-354,[8] the operations of the second injury fund always have been underwritten, not by the state, but by annual special assessment premium surcharges paid by employers or their insurance carriers.

In 1995, a blue ribbon commission, which included both government and industry representatives, reported to the legislature that the second injury fund had not been managed properly and faced substantial unfunded claims for payment. Witnesses testifying at a legislative committee hearing and on the floor of the legislature noted the fact that the problem of employment for the disabled had been attenuated by the enactment of federal and state antidiscrimination statutes.

Concluding that the second injury fund had outlived its usefulness, the legislature adopted P.A. 95-277 to

[8] General Statutes § 31-354 provides in relevant part: "(a) There shall be a fund to be known as the Second Injury Fund. Each employer, other than the state, shall, within thirty days after notice given by the State Treasurer, pay to the State Treasurer for the use of the state a sum in payment of his liability under this chapter . . . . Such sum shall be an amount sufficient to (1) pay the debt service on state revenue bond obligations authorized to be issued under and for the purposes set forth in section 31-354b including reserve and covenant coverage requirements, (2) provide for costs and expenses of operating the Second Injury Fund, and (3) pay Second Injury Fund stipulations on claims settled by the custodian or other benefits payable out of the Second Injury Fund and not funded through state revenue bond obligations and shall be determined in accordance with the regulations adopted pursuant to the provisions of section 31-349g. . . ."

revise § 31-349 in two significant respects. First, the legislature enacted § 31-349 (d), which closes the fund to any transfer of claims for injuries occurring after July 1, 1995. Second, in order to permit a determination of potential fund liability for prior injuries, the legislature enacted § 31-349 (e), which requires re-notification to the fund by October 1, 1995, of all claims of which the fund already had notice. It is the constitutional validity of this re-notification requirement that the respondents have questioned.

## II

As the respondents acknowledged at oral argument, their constitutional claims cannot succeed unless they can demonstrate that the legislation establishing the second injury fund in 1945 created a contractual relationship between that fund and employees, employers and insurers. Without a contractual relationship, the legislative requirement of timely re-notification of potential transfer claims does not "impair the obligation of contracts." Similarly, without a contractual relationship, that legislative requirement does not deprive the respondents of a vested property interest entitled to due process protection.

The respondents claim, for two reasons, that the second injury fund embodies a contract between them and the fund. We find neither argument persuasive.

First, the respondents rely on our case law that, long before the creation of the second injury fund, concluded that the workers' compensation act created a contract between employees and their employers and insurers. See, e.g., *Preveslin* v. *Derby & Ansonia Developing Co.*, 112 Conn. 129, 142, 151 A. 518 (1930). That conclusion has not been questioned subsequently because it is inextricably interwoven with the principle that eligibility for workers' compensation deprives injured employees

of access to otherwise available common-law tort remedies. General Statutes § 31-284 (a); see, e.g., *Dowling* v. *Slotnick*, 244 Conn. 781, 799, 712 A.2d 396, cert. denied, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998); *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 381, 698 A.2d 859 (1997).

The respondents claim that, because the second injury fund was designed to permit the transfer of some workers' compensation benefit payments, the fund is a party to the underlying contract between the employee and the employer or its insurer. We never have held that the fund is a contracting party for all purposes, and we decline so to hold in the context of this case. It is of paramount significance that the transfer process has no effect on the injured worker's entitlement to payment of benefits. The only issue raised by a limitation on potential transfers is whether the burden of direct payment falls entirely, or only in part, on employers and their insurers. Access to transfers, therefore, bears no relationship to the underlying workers' compensation contract. See *Everett* v. *Ingraham*, 150 Conn. 153, 157, 186 A.2d 798 (1962).

Second, the respondents appear to claim, interstitially, that the statutory enactment of the second injury fund itself manifested a legislative intent to impose a contractual obligation on the fund. Perhaps the legislature might have done so, but the respondents have pointed to no textual support for such an inference. As the fund reminds us, we presume that a statute does not create private vested contractual rights "absent a clear showing of legislative intent to the contrary." *Pineman* v. *Oechslin*, 195 Conn. 405, 410–11, 488 A.2d 803 (1985); see also *Dodge* v. *Board of Education*, 302 U.S. 74, 78–79, 58 S. Ct. 98, 82 L. Ed. 57 (1937). That presumption is rooted in each legislature's authority to revisit and to alter the policy decisions of its predecessors. For that reason, among others, the respondents

have no claim of estoppel arising out of expectations generated by prior legislation[9] unless they can establish a predicate contractual foundation therefor.[10] They have been unable to do so.

In sum, we conclude that the re-notification provision contained in § 31-349, as revised in 1995, has no constitutional flaw that is cognizable either under the contract clause or the due process clause of the United States constitution. Both constitutional provisions require a showing of a contractual relationship that has not been made under the circumstances of this case.

The decision of the compensation review board is affirmed.

In this opinion the other justices concurred.

---

[9] The respondents have advanced no such claim.

[10] In light of our rejection of the respondents' claim that they have an enforceable contract with the second injury fund, we need not address their arguments that the terms of that contract provided the respondents with a defense to payment of compensation benefits dating from the occurrence of Cece's injury.