JACKIE CASEY *v.* NORTHEAST
UTILITIES ET AL.
(SC 16009)

Borden, Norcott, Palmer, McDonald and Peters, Js.

Argued March 24—officially released June 29, 1999

*Nancy R. Sussman,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellant (defendant second injury fund).

*Richard T. Stabnick,* for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The dispositive issue in this appeal is whether the defendant second injury fund (fund), may

be ordered to pay penalties for failing to make timely payments pursuant to General Statutes § 31-303.[1] The fund appeals from a decision of the compensation review board (board) affirming an order issued by a workers' compensation commissioner (commissioner) directing the fund to pay a penalty on a certain payment to the plaintiff, Jackie Casey, which the commissioner found to be untimely under § 31-303.[2] We affirm the decision of the board.

The facts are not in dispute. On May 18, 1988, the plaintiff suffered a compensable back injury while employed by the named defendant, Northeast Utilities (employer). The plaintiff had suffered a spinal cord injury prior to his 1988 injury. Because the fund had accepted that the spinal cord injury materially and substantially had exacerbated the plaintiff's 1988 injury, the claim for the 1988 injury was transferred to the fund. On May 24, 1995,[3] a commissioner found that the

---

[1] General Statutes § 31-303 provides: "Payments agreed to under a voluntary agreement shall commence on or before the tenth day from the date of agreement. Payments due under an award shall commence on or before the tenth day from the date of such award. Payments due from the Second Injury Fund shall be payable on or before the tenth business day after receipt of a fully executed agreement. Any employer who fails to pay within the prescribed time limitations of this section shall pay a penalty for each late payment, in the amount of twenty per cent of such payment, in addition to any other interest or penalty imposed pursuant to the provisions of this chapter."

[2] The fund appealed the decision of the board to the Appellate Court. We transferred that appeal to this court pursuant to Practice Book § 4023, now § 65-1, and General Statutes § 51-199 (c).

[3] The fund became liable to the plaintiff by accepting the transfer of an acknowledgment of the plaintiff's physical condition pursuant to General Statutes (Rev. to 1995) § 31-325. We note for clarity that in 1995, "[c]oncluding that the second injury fund had outlived its usefulness," the legislature adopted No. 95-277 of 1995 Public Acts (P.A. 95-277) by which it comprehensively revised the fund's statutory obligations in order to reduce the fund's financial liabilities. *Cece* v. *Felix Industries, Inc.*, 248 Conn. 457, 463–64, 728 A.2d 505 (1999); see footnote 8 of this opinion; see also Public Acts 1996, No. 96-242. As a result, General Statutes (Rev. to 1995) § 31-325 was repealed by § 18 of P.A. 95-277, and thus has not been in force as of that act's effective date of June 29, 1995. See P.A. 95-277, § 19. Public Act 95-

plaintiff had been and continued to be totally disabled since May 18, 1988, and accordingly issued a finding and an award by which he ordered the fund to pay the plaintiff temporary total disability benefits starting from the 1988 date of injury. The employer and the fund were parties to these proceedings. On July 21, 1995, fifty-nine days after the May 24, 1995 award of benefits, the fund mailed the plaintiff a check in the amount of $21,336.32. That amount represented the plaintiff's temporary total disability benefits through July 22, 1995.

Because the fund had made its payment more than ten days from the date of the award of benefits, the plaintiff sought to have a penalty imposed on the fund pursuant to § 31-303. Following a hearing, another commissioner found that $20,703.52 of the $21,336.32 payment was late under § 31-303, and assessed a late payment penalty of 20 percent against that amount. Accordingly, the fund was ordered to pay $4140.70 to the plaintiff pursuant to § 31-303. The board affirmed the commissioner's order, and the fund then appealed the decision of the board.

The fund claims that the board's upholding of the imposition of the penalty was improper because: (1) § 31-303 imposes a deadline on the fund where payments are due under a "fully executed agreement," but imposes no deadlines on the fund where payments are to be made under an award; (2) § 31-303 assesses penalties for late payments against employers but not against the fund; and (3) § 31-303 imposes penalties only on untimely periodic payments but not on untimely lump sum payments. We disagree.

277, however, did not amend § 31-303. We further note that the penalty provisions of § 31-303, therefore, remain viable. The fund has not argued that the legislature, by adopting P.A. 95-277, intended to exempt the fund from possible penalties imposed by § 31-303 for the obligations that the fund incurred prior to the effective date of that act as part of its design to reduce the fund's financial liabilities.

The issues in this appeal require that we interpret § 31-303. Accordingly, we begin by setting out the applicable standard of review. "General Statutes § 31-278 sets forth the powers and duties of commissioners. Pursuant to that section, commissioners 'shall have all powers necessary to enable [them] to perform the duties imposed upon [them] by the provisions of [the Workers' Compensation Act (act)],' and each commissioner is directed to 'hear all claims and questions arising under [the act] . . . .' " *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 444–45, 705 A.2d 1012 (1997). Generally, "[o]ur review of an agency's decision on questions of law is limited by the traditional deference that we have accorded to that agency's interpretation of the acts it is charged with enforcing." *Police Dept.* v. *State Board of Labor Relations*, 225 Conn. 297, 300, 622 A.2d 1005 (1993). We do not, however, accord *special deference* to the agency's decision when that decision involves "a question of law [that] has not previously been subject to judicial scrutiny." (Internal quotation marks omitted.) *Duni* v. *United Technologies Corp.*, 239 Conn. 19, 25, 682 A.2d 99 (1996).

"In interpreting statutes, we are guided by 'well established tenets of statutory construction. [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . and that [s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a

consistent body of law.' " *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 243 Conn. 444.

"We have previously recognized that our construction of the [act] should make every part operative and harmonious with every other part insofar as is possible . . . . *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 104, 491 A.2d 368 (1985). In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result. *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 187, 592 A.2d 912 (1991)." (Internal quotation marks omitted.) *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 391, 618 A.2d 1340 (1993). With these principles in mind, we address the issues raised in this appeal.

The fund first claims that, under § 31-303, it is obligated to make payments within ten business days only from the date of the receipt of a fully executed agreement. Accordingly, because the payment in this case was due under an award, the fund argues that the board improperly concluded that the fund's payment to the plaintiff was untimely. We are not persuaded.

"It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. *Caltabiano* v. *Planning & Zoning Commission*, 211 Conn. 662, 666, 560 A.2d 975 (1989)." *Vaillancourt* v. *New Britain Machine/Litton*, supra, 224 Conn. 391. We, therefore, begin our analysis of this issue with the language of § 31-303.

Section 31-303 provides that "[p]ayments agreed to under a voluntary agreement shall commence on or before the tenth day from the date of agreement. Payments due under an award shall commence on or before the tenth day from the date of such award. *Payments due from the Second Injury Fund shall be payable on*

*or before the tenth business day after receipt of a fully executed agreement.* Any employer who fails to pay within the prescribed time limitations of this section shall pay a penalty for each late payment, in the amount of twenty per cent of such payment, in addition to any other interest or penalty imposed pursuant to the provisions of this chapter." (Emphasis added.) The fund contends that because the statute places an express time limitation only on payments due from the fund for fully executed agreements, there is no time limitation on payments due from the fund pursuant to awards. We do not agree.

We first note that the practical result of the fund's interpretation would be a statutory regime where payments due under a fully executed agreement would be due within a certain period of time, but payments due under an award would be subject to no time restraints. There appears to be no practical difference, however, between payments that have become due under a fully executed agreement and those due under an award. "The unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result." *State* v. *Campbell*, 180 Conn. 557, 563, 429 A.2d 960 (1980). We, therefore, reject the fund's suggestion that it may be liable for a penalty only for untimely payments due under a fully executed agreement.

The better approach to analyzing § 31-303 is to focus on the practical implication of its application where payments have become due under an award to determine whether, in the context of imposing time limitations, there are any relevant differences between payments due from the fund under an award and those due under a fully executed agreement, such that the fund necessarily would have to be immune from time limitations under § 31-303. It is important to note that

the first three sentences of § 31-303 are concerned with setting time limitations. Under § 31-303, the time period for payments due under a fully executed agreement begins to run from the date of the receipt of the agreement, whereas payments due under an award must be received ten days from the date the award is granted. Both formulas include a reference point from which the time period is calculated.

The reference point from which the time period for payments under a fully executed agreement is calculated is the date of the receipt of that agreement by the fund. Common sense would lead one to conclude that the receipt date has been set as the reference date because it is on that date that the fund has definite notice of its obligations.[4] On the other hand, § 31-303 provides only that "[p]ayments due under an award shall commence on or before the tenth day from the

---

[4] In a different context, we have analyzed the importance of effectuating a timely notice upon the fund. Upon effectuation of a proper transfer pursuant to General Statutes § 31-349 (b), the fund becomes obligated to make payments of workers' compensation benefits to the injured employee. But see footnote 8 of this opinion (fund liable only for claims properly transferred on or before July 1, 1999). A proper transfer may be effectuated by fulfilling certain statutory requirements. Among others, the employer must submit "copies of all findings, awards and approved voluntary agreements" to the fund "no later than three calendar years after the date of injury or no later than ninety days after completion of payments for the first one hundred and four weeks of disability . . . ." General Statutes § 31-349 (b). "The object of the ninety-day statutory notice is to enable the fund to be apprised promptly of such a claim being made, to obtain a copy of the agreement or award and to have immediate access to all medical reports. Such information is essential to enable the fund to assess promptly its alleged liability and to establish immediately its financial reserves. A further objective is to give the fund a reasonable period of time within which to investigate the claim and to prepare to meet it." *Plesz* v. *United Technologies Corp.*, 174 Conn. 181, 188, 384 A.2d 363 (1978). Similarly, the object of allowing the fund ten business days from the date of the receipt of a fully executed agreement before it may become liable for penalties for late payments appears to be to provide a reasonable period of time for the fund to make payments to the claimant, or perhaps take other appropriate actions.

date of such award," and does not set a different reference date for calculation of a due date for payments due from the fund. Indeed, where payments are due under an award, that statute does not distinguish between situations involving payments due from an employer, its insurer or the fund. This lack of specificity in the statute is, however, of no moment because, in practice, the fund will receive notice of its obligation when an award is granted, just as an employer will. Hence, the fund and the employers are not in different positions and, therefore, need not be treated differently under the statute.

Under General Statutes § 31-355 (a), the commissioner must "give notice to the Treasurer of all hearing of matters which may involve payment from the Second Injury Fund, and may make an award directing the Treasurer to make payment from the fund." Therefore, where its interests are concerned, the fund is notified to attend. See Regs., Conn. State Agencies § 31-354-12.[5] Accordingly, where an award is concerned, the fund receives notice of its obligations on the date the award is granted. It follows that because the fund receives notice and may attend hearings where its interests are implicated, the fund is in no different a position than an employer that has become obligated to pay workers' compensation benefits pursuant to an award. Hence, there would have been no apparent reason for the legis-

---

[5] Section 31-354-12 of the Regulations of Connecticut State Agencies provides: "Payment of compensation shall be paid from the Fund provided:

"(a) A formal hearing is held and the Second Injury Fund, the Attorney General's Office, and Workers' Compensation Department, were noticed to attend.

"(b) A finding and award is granted against the employer after notice to the employer.

"(c) Ten days have passed from the date of notice of the award to the employer and the claimant has not received payment and the employer has not instituted an appeal.

"(d) The claimant requests and is granted a supplemental order of payment against the Fund."

lature to make a distinction between an employer and the fund where an award is concerned.

The fund has argued that because § 31-303 provides that "[p]ayments due from the Second Injury Fund shall be payable on or before the tenth business day after receipt of a fully executed agreement," but also provides that "[p]ayments agreed to under a voluntary agreement shall commence on or before the tenth day from the date of the agreement," the legislature intended to impose a time limitation on the fund only where payments are due pursuant to a fully executed agreement. According to the fund, if the statute is read any other way, the part of the statute that specifically refers to the fund will be rendered superfluous. The fund's argument is misdirected because it does not address the actual issue before this court in this appeal. The fund's argument essentially presents a different question of law that need not be resolved in this case.

In the present case, a penalty was imposed because the fund's payment due under an award was untimely under § 31-303. The actual issue before this court is, therefore, whether the fund is obligated to meet the time limitations set out in § 31-303 for payments due pursuant to an award. Any analysis conducted to determine the statutory application of the time limitation imposed upon payments due from the fund pursuant to a voluntary agreement, and the relationship of such application to time limitations imposed on payments due from fully executed agreements, will be purely academic, and will not resolve the issue here.

Nevertheless, without actually construing the precise meaning of the phrases, "voluntary agreement" and "fully executed agreement,"[6] we note that the fund, as

---

[6] We have held that the modifier "fully executed" indicates the legislature's intent to distinguish between an agreement and an agreement that bears such formalities as a signature and the commissioner's approval. *Dos Santos* v. *F. D. Rich Construction Co.*, 233 Conn. 14, 24, 658 A.2d 83 (1995).

well as employers, may enter into such agreements, which statutorily are labeled as voluntary agreements. See General Statutes § 31-353 (applicable to agreements between fund and employee); General Statutes § 31-296 (applicable to agreements between employer and employee). Pursuant to those statutes, both the fund and employers may agree to settle a claim, and that agreement becomes effective upon approval of the commissioner.

The fund also may become obligated to provide compensation to the injured employee upon a transfer pursuant to General Statutes § 31-349.[7] The transfer may

[7] General Statutes § 31-349 (b) provides: "As a condition precedent to the liability of the Second Injury Fund, the employer or its insurer shall: (1) Notify the custodian of the fund by certified mail no later than three calendar years after the date of injury or no later than ninety days after completion of payments for the first one hundred and four weeks of disability, whichever is earlier, of its intent to transfer liability for the claim to the Second Injury Fund; (2) include with the notification (A) copies of all medical reports, (B) an accounting of all benefits paid, (C) copies of all findings, awards and approved voluntary agreements, (D) the employer's or insurer's estimate of the reserve amount to ultimate value for the claim, (E) a two-thousand-dollar notification fee payable to the custodian to cover the fund's costs in evaluating the claim proposed to be transferred and (F) such other material as the custodian may require. The employer by whom the employee is employed at the time of the second injury, or its insurer, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. Failure on the part of the employer or an insurer to comply does not relieve the employer or insurer of its obligation to continue furnishing compensation under the provisions of this chapter. The custodian of the fund shall, by certified mail, notify a self-insured employer or an insurer, as applicable, of the rejection of the claim within ninety days after receiving the completed notification. Any claim which is not rejected pursuant to this section shall be deemed accepted, unless the custodian notifies the self-insured employer or the insurer within the ninety-day period that up to an additional ninety days is necessary to determine if the claim for transfer will be accepted. If the claim is accepted for transfer, the custodian shall file with the workers' compensation commissioner for the district in which the claim was filed, a form indicating that the claim has been transferred to the Second Injury Fund and the date that such claim was transferred and shall refund fifteen hundred dollars of the notification fee to the self-insured employer or the insurer, as applicable. A copy of the form shall be mailed to the self-insured

be accomplished through submission of an approved voluntary agreement between the employer and the employee.[8] See General Statutes § 31-349 (b). Where there is a voluntary agreement between the fund and an injured employee, the fund becomes notified of its obligation when the commissioner approves the agreement between the two parties. On the other hand, the fund may have no knowledge of an approved voluntary agreement between the employer and the injured employee until it has received the agreement, perhaps when there is an attempt to transfer liability pursuant to § 31-349 (b). The apparent reason for the inclusion of a formula that calculates a time limitation from the date on which a fully executed agreement is received by the fund is to account for the latter circumstances.

We also note that the foregoing construction of the first and the third sentences of § 31-303 is consistent with the analytic framework that we previously

employer or the insurer and to the claimant. No further action by the commissioner shall be required to transfer said claim. If the custodian rejects the claim of the employer or its insurer, the question shall be submitted by certified mail within thirty days of the receipt of the notice of rejection by the employer or its insurer to the commissioner having jurisdiction, and the employer or insurer shall continue furnishing compensation until the outcome is finally decided. Claims not submitted to the commissioner within said time period shall be deemed withdrawn with prejudice. If the employer or insurer prevails, or if the custodian accepts the claim all payments made beyond the one-hundred-four-week period shall be reimbursed to the employer or insurer by the Second Injury Fund."

[8] As a general matter, the liability of the fund has been greatly curtailed. Pursuant to § 31-349 (d), "no injury which occur[red] on or after July 1, 1995, shall serve as a basis for transfer of a claim to the Second Injury Fund under this section. All such claims shall remain the responsibility of the employer or its insurer under the provisions of this section." Furthermore, General Statutes § 31-349h provides: "All transfers of claims to the Second Injury Fund with a date of injury prior to July 1, 1995, shall be effected no later than July 1, 1999. All claims not transferred to the Second Injury Fund, on or before July 1, 1999, shall remain the responsibility of the employer or its insurer." See also General Statutes § 31-349 (e) and (f) (setting out statutory requirements for preserving claims filed with fund for injuries that occurred prior to July 1, 1995).

employed in the resolution of the issue. That framework, in general terms, is based on the proposition that time limitations, as set forth in § 31-303, are calculated from a reference point. The reference points chosen by the legislature in this statute appear to have been set from the date on which the fund has notice of its obligation to make payments to an injured employee. We, therefore, are not persuaded that because § 31-303 does not specifically obligate the fund to make payments within a specified time where payments are due under an award, the legislature intended to immunize the fund from a time limitation under such circumstances. Accordingly, we conclude that § 31-303 imposes a time limitation upon the fund, as well as upon employers, for making payments pursuant to an award.

The fund next claims that it was improper for the board to impose a penalty on the fund due to its untimely payment under § 31-303, because the penalty provision of § 31-303 applies only to employers, and not to the fund. We disagree. Because the fund essentially stands in the shoes of the employer for purposes of payment of compensation benefits to the injured employee, we conclude that the penalty provision of § 31-303 is equally applicable to the fund.

The penalty provision of § 31-303 provides that "[a]ny employer who fails to pay within the prescribed time limitations of this section shall pay a penalty for each late payment, in the amount of twenty per cent of such payment, in addition to any other interest or penalty imposed pursuant to the provisions of this chapter." "An obvious purpose of [a] penalty provision [in a workers' compensation system] is to induce prompt payment of legitimate claims and to protect claimants against unnecessary and unjustifiable delays." *Brantley* v. *A D H Building Contractors, Inc.*, 215 So. 2d 297, 298 (Fla. 1968); see also *Masi* v. *A. Gasbarro & Sons, Inc.*, 103 R.I. 136, 139, 235 A.2d 341 (1967) (holding that

penalty provision of workers' compensation system "was enacted to insure the prompt regular payment of weekly compensation benefits due an employee"). The legislative history of the penalty provision of § 31-303 supports this concept.[9] Making certain that an injured employee will have prompt access to workers' compensation benefits is also a fundamental aspect of Connecticut's workers' compensation system.

"Connecticut first adopted a statutory scheme of workers' compensation in 1913. The purpose of the [act] . . . General Statutes § 31-275 et seq.; is to provide compensation for injuries arising out of and in the course of employment, regardless of fault. *Klapproth* v. *Turner*, 156 Conn. 276, 279, 240 A.2d 886 (1968). Under the statute, the employee surrenders his right to bring a common law action against the employer, thereby limiting the employer's liability to the statutory amount. . . . In return, the employee is compensated for his or her losses without having to prove liability. . . . In a word, these statutes compromise an employ-

---

[9] The legislative history of § 31-303 does not indicate that the penalty provision was not intended to be applicable to the fund. The legislative history of § 31-303 only restates the language of that section: "In this bill, and this is one ingredient that I am especially happy is in the amendment we're about to vote on. There is a 20 [percent] penalty for insurance companies or employers who make late payments of doctor bills or benefits for wage replacement after they have been ordered to be made by the workers' comp[ensation] commission or after they were part of a voluntary agreement by the employer.

"In other words, there are many informal and formal hearings at the workers' comp[ensation] commission where insurance company lawyers or lawyers promise to make a payment within a few days, or who are ordered to make that payment. If they don't make the payment . . . there are no effective penalties on the books today. This imposes a 20 [percent] penalty going directly to the claimant for those late payments, plus interest." 36 H.R. Proc., Pt. 18, 1993 Sess., pp. 6253–54, remarks of Representative Michael P. Lawlor. Representative Lawlor referred to the penalty provision of § 31-303 as: "Imposition of penalties for insurance companies and employers who don't pay on time those benefits and medical bills that they are obligated to do under the system." Id., p. 6143.

ee's right to a common law tort action for work related injuries in return for *relatively quick* and certain compensation." (Citations omitted; emphasis added; internal quotation marks omitted.) *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 381, 698 A.2d 859 (1997). "The intention of the framers of the act was to establish *a speedy*, effective and inexpensive method for determining claims for compensation. *Taylor* v. *St. Paul's Universalist Church*, 109 Conn. 737, 147 A. 671 [1929]. To carry out that objective, [for instance] the provisions of the act allow a period of ten days in which to appeal the compensation commissioner's award. General Statutes § 31-301." (Emphasis added.) *Chieppo* v. *Robert E. McMichael, Inc.*, 169 Conn. 646, 653, 363 A.2d 1085 (1975). The workers' compensation system is also designed to minimize the adverse effects that administrative delays could have on the financial status of an injured employee. See, e.g., General Statutes § 31-301 (f).[10] An injured employee who may not be able to earn a living due to temporary or permanent disabilities caused by his injuries faces grim economic hardships that will be aggravated if there is delay in the availability of compensation. Hence, promptness in providing compensation is a key factor in alleviating the severity of an injured employee's financial predicament.

Where compensation of an injured employee is concerned, the fund and the employer perform similar functions in many respects. "By following the prescribed procedures, the employer may limit his liability to pay-

---

[10] General Statutes § 31-301 (f) provides: "During the pendency of any appeal of an award made pursuant to this chapter, the claimant shall receive all compensation and medical treatment payable under the terms of the award to the extent the compensation and medical treatment are not being paid by any health insurer or by any insurer or employer who has been ordered, pursuant to the provisions of subsection (a) of this section, to pay a portion of the award. The compensation and medical treatment shall be paid by the employer or its insurer."

ments due in the first 104 weeks of the employee's second disability, after which the [fund] assumes responsibility for compensation and medical treatment." *Jacques* v. *H. O. Penn Machinery Co.*, 166 Conn. 352, 358, 349 A.2d 847 (1974); see also *Fimiani* v. *Star Gallo Distributors, Inc.*, 248 Conn. 635, 651, 729 A.2d 212 (1999). This demonstrates two coexisting functions of the fund: to provide adequate compensation to injured employees, while relieving employers from the undue hardship of providing compensation for subsequent injuries to an injured employee.

The similarity between the roles that an employer and the fund occupy under Connecticut's workers' compensation system is not, however, limited to their roles as providers of compensation. For example, pursuant to § 31-353,[11] the fund may enter into a voluntary agreement with an injured employee in order to settle the employee's claim. This section is similar to § 31-296,[12] pursuant to which an employer may enter into a

---

[11] General Statutes § 31-353 provides: "If the Treasurer and an injured employee, or his legal representative, reach an agreement in regard to compensation payable under section 31-349, such agreement shall be submitted in writing to the commissioner for his approval and, upon approval, shall remain in effect until otherwise ordered by the commissioner. He may make payment by way of final settlement in any matter concerning the fund, subject to the approval of the commissioner, whenever it is for the best interests of the injured employee."

[12] General Statutes § 31-296 provides in relevant part: "If an employer and an injured employee, or in case of fatal injury his legal representative or dependent, at a date not earlier than the expiration of the waiting period, reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, he shall so approve it. A copy of the agreement, with a statement of the commissioner's approval thereof, shall be delivered to each of the parties and thereafter it shall be as binding upon both parties as an award by the commissioner. . . ."

voluntary agreement with the injured employee. Moreover, pursuant to General Statutes § 31-352,[13] the fund has the same statutory right as an employer, or an employee; see General Statutes § 31-293;[14] to seek redress from any party whose actions have caused

[13] General Statutes § 31-352 provides: "The provisions of section 31-293 shall apply to any payments from the Second Injury Fund and the Treasurer is authorized to bring an action, or join in an action as provided by said section, when he has paid, or by award has become obligated to pay, compensation out of the fund." General Statutes § 31-293 allows the employer, the injured employee, and in some instances, the fund, to bring an action against a third party to recover.

[14] General Statutes § 31-293 provides in relevant part: "(a) When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of the injured employee against such person, but the injured employee may proceed at law against such person to recover damages for the injury; and any employer or the custodian of the Second Injury Fund, having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee. If the employee, the employer or the custodian of the Second Injury Fund brings an action against such person, he shall immediately notify the others, in writing, by personal presentation or by registered or certified mail, of the action and of the name of the court to which the writ is returnable, and the others may join as parties plaintiff in the action within thirty days after such notification, and, if the others fail to join as parties plaintiff, their right of action against such person shall abate. In any case in which an employee brings an action against a party other than an employer who failed to comply with the requirements of subsection (b) of section 31-284, in accordance with the provisions of this section, and the employer is a party defendant in the action, the employer may join as a party plaintiff in the action. The bringing of any action against an employer shall not constitute notice to the employer within the meaning of this section. If the employer and the employee join as parties plaintiff in the action and any damages are recovered, the damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of the recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting the recovery. The rendition of a judgment in favor of the employee or the employer against

workers' compensation benefits to be paid to the

the party shall not terminate the employer's obligation to make further compensation which the commissioner thereafter deems payable to the injured employee. If the damages, after deducting the employee's expenses as provided in this subsection, are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. No compromise with the person by either the employer or the employee shall be binding upon or affect the rights of the other, unless assented to by him. For the purposes of this section, the claim of the employer shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of the injury. The word 'compensation', as used in this section, shall be construed to include incapacity payments to an injured employee, payments to the dependents of a deceased employee, sums paid out for surgical, medical and hospital services to an injured employee, the burial fee provided by subdivision (1) of subsection (a) of section 31-306, payments made under the provisions of sections 31-312 and 31-313, and payments made under the provisions of section 31-284b in the case of an action brought under this section by the employer or an action brought under this section by the employee in which the employee has alleged and been awarded such payments as damages. Each employee who brings an action against a party in accordance with the provisions of this subsection shall include in his complaint (A) the amount of any compensation paid by the employer or the Second Injury Fund on account of the injury which is the subject of the suit and (B) the amount equal to the present worth of any probable future payments which the employer or the Second Injury Fund has, by award, become obligated to pay on account of the injury. Notwithstanding the provisions of this subsection, when any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury and the injured employee has received compensation for the injury from such employer, its workers' compensation insurance carrier or the Second Injury Fund pursuant to the provisions of this chapter, the employer, insurance carrier or Second Injury Fund shall have a lien upon any judgment received by the employee against the party or any settlement received by the employee from the party, provided the employer, insurance carrier or Second Injury Fund shall give written notice of the lien to the party prior to such judgment or settlement.

"(b) When an injury for which compensation is payable under the provisions of this chapter is determined to be the result of a motor vehicle accident or other accident or circumstance in which a third person other than the employer was negligent and the claim is subrogated by the employer

injured employee. These examples illustrate that, where the employers and the fund are functionally similar, they are treated similarly under our workers' compensation system. This proposition is in harmony with our prior conclusion that the fund's obligation to provide timely compensation pursuant to an award is no different from an employer's obligation to do the same. We often have interpreted workers' compensation laws liberally in order to effectuate their underlying policies where those policies favor an injured employee. See *Muldoon* v. *Homestead Insulation Co.*, 231 Conn. 469, 483, 650 A.2d 1240 (1994). In the present case, the general policies advanced by our workers' compensation system and the penalty provision of § 31-303 are aligned to achieve an important goal: to provide the injured employee with prompt access to compensation. We agree with the board's observation that "[t]here is no apparent reason why the legislature would espouse a policy which provides that claimants paid by the [f]und have less of a right to timely payments than those claimants paid by an employer or insurer." From an injured employee's point of view, delay in making payments by the fund is as harmful as is delay by an employer. We conclude, therefore, that the penalty provision of § 31-303 is applicable to the second injury fund as well as employers.

The fund argues, however, that the legislative history surrounding the workers' compensation reform legislation; see Public Acts 1993, No. 93-228; demonstrates that the legislature intended to immunize the fund from penalties because the "overall tenor of the 1993 legislation, of which the § 31-303 penalty provision was a part, was to *reduce* workers' compensation costs and *reduce*

---

or its workers' compensation insurance carrier, the insurance carrier shall provide a rate adjustment to the employer's workers' compensation policy to reflect the recovery of any compensation paid by the insurance carrier prior to subrogation. . . ."

the financial burdens of the fund." (Emphasis in original.) The fund elaborates that because it pays benefits out of a statewide assessment that it imposes upon the employers in this state, the imposition of a penalty indirectly increases the costs to the employers in this state, thus undermining the legislature's intent to reduce workers' compensation costs. While the fund is correct in its observation that the legislature, in 1993, took steps to reduce the costs of workers' compensation benefits in Connecticut; see generally Legislative Program Review and Investigations Committee, Workers' Compensation: Impact of the 1991 and 1993 Reforms (1995); there is no indication that it intended to achieve that result by allowing the fund to delay payments of benefits when those benefits have become due.

Finally, the fund claims that even if the penalty provision of § 31-303 may be applied to late payments made by the fund, such a penalty may be assessed only against untimely periodic payments, and not against an untimely lump sum payment. The fund argues, therefore, that no penalty should have been assessed against its untimely payment in this case. The fund's argument is unavailing.

The fund bases its argument on the express language of the penalty provision of § 31-303, which provides that "[a]ny employer who fails to pay within the prescribed time limitations of this section shall pay a penalty for *each late payment* . . . ." (Emphasis added.) It is important to note that there is a difference between a lump sum payment and simply a sum of money. A lump sum payment is defined as a "single payment in contrast to installments; e.g. single premium payment for life insurance; a single lump sum divorce settlement; or single worker's compensation payment in lieu of future monthly installment payments." Black's Law Dictionary (6th Ed. 1990). The fund mischaracterizes its

payment as a lump sum payment because the payment made to the plaintiff appears to have been a sum of periodic payments[15] that had become due. The fund concedes that § 31-303 is applicable to untimely periodic payments. Accordingly, we need not reach the issue of whether the penalty provision of § 31-303 is applicable to lump sum payments in order to conclude that the penalty was assessed properly in this case.

The decision of the board is affirmed.

In this opinion the other justices concurred.

---

[15] Our review of the record indicates that this claim was not raised before the board. Consequently, there are no specific facts regarding the exact nature of the payment in the record. In his brief, the plaintiff points out that the amount he received "was in fact representative of a stream of payments which had become due to" him. The fund concedes this point. We also note that in imposing the penalty, the commissioner found that the $21,336.32, which was mailed to the plaintiff, only covered payments through July 22, 1995. Moreover, the penalty was imposed on $20,703.52 of the total amount, which indicates that the commissioner determined untimeliness based on when each payment was due.