[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF APPEAL
The plaintiff, Carolyn Longstreth (Longstreth), appeals from a decision of the defendant, the Zoning Board of Appeals of the Town of Southbury (ZBA), in which the ZBA affirmed the issuing of Zoning Permit No. 2845 by Mark Cody, a Zoning Enforcement Officer for the Town of Southbury (ZEO). The ZBA's decision would allow William Andricovich and Sabina Andricovich (Andricovichs), also defendants in this case, to construct a detached dwelling on their parcel located within the PDD #5 zone.
 BACKGROUND
By application dated October 5, 1998, the Andricovichs were granted zoning permit No. 2845 to build a single family dwelling on Parcel C, located at 750/800 Southford Road, Southbury, CT 06488. (Return of Record [ROR], Exh. 1-2.) The Andricovichs seek to construct a new single family house on their property for their son and his family. (ROR, Exh. 26.) The property operates as a horse farm and family members are employed at the farm. (ROR, Exh. 5.) Parcel C is 9.1232 acres and is within the PDD #5 zone. (ROR, Exh. 1.)
Parcel C was created as part of the Far View Commons Planned Development proposal, whereby a 41.3 acre tract, PDD #5, would be divided into 17.64 acres of condominium buildings, 14.5 acres devoted to open space condominium use, and 9.1 acres to farm use. (ROR, Exh. 11.) The maintenance of the 9.1 acres devoted to farm use was specifically created to minimize the visual impact of the condominiums, provide scenic value, and preserve the rural and open space character of the Town of Southbury. (ROR, Exh. 11, 12, 16.)
Longstreth appealed from the decision of the ZEO, who had granted the Andricovichs' application for zoning permit No. 2845. The ZBA conducted a public hearing on December 1, 1998, to consider the plaintiff's appeal for correction of the alleged error of the ZEO in granting zoning permit No. 2845. (ROR, Exh. 5.) The ZBA denied Longstreth's application to appeal at their regular meeting on January 5, 1999. (ROR, Exh. 6.) Longstreth now appeals from the ZBA's decision to the Superior Court.[1]
 JURISDICTION
CT Page 5567
General Statutes § 8-8 governs appeals taken from the decision of a ZBA to the Superior Court. "[A] statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created. [Such] provisions are mandatory, and, if not complied with, the appeal is subject to dismissal." (Internal quotation marks omitted.) Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988).
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). General Statutes § 8-8 (a) provides that an aggrieved person "includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
The plaintiff alleges aggrievement, (Appeal, ¶ 12), and she testified to and submitted copies of quit-claim deeds that convey property to the plaintiff that directly abuts the property for which the challenged zoning permit was issued. (Plaintiff's Exh. 1B.) The plaintiff has pleaded and proven that she owns land that abuts the subject property, and therefore, Longstreth is statutorily aggrieved.
Timeliness and Service of Process
General Statutes § 8-8 (b) provides, in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the day that notice of the decision was published as required by the general statutes."[2]
General Statutes § 8-8 (e) further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
The plaintiff alleges that the ZBA published notice of its decision in The Voices on January 13, 1999, (Appeal, ¶ 7), and the record contains an affidavit of this publication. (ROR, Exh. 19.) On January 27, 1999, this appeal was commenced by service of process on Joyce K. Hornbecker, Town Clerk, who accepted service for the Town of Southbury, and on Morlene S. Snider, Clerk, who accepted service for the Clerk of the Southbury Zoning Board of Appeals. (Sheriff's Return.)[3]
 SCOPE OF REVIEW
CT Page 5568
"A trial court must . . . review the decision of a zoning board of appeals to determine if the board acted arbitrarily, illegally or unreasonably." Wnuk v. Zoning Board of Appeals, 225 Conn. 691, 695-96,626 A.2d 698 (1993). The "trial court ha[s] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." Irwin v. Planning ZoningCommission, 244 Conn. 619, 627, 711 A.2d 675 (1998).
"[W]here a zoning [commission] has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. Furthermore, [t]he zone change must be sustained if even one of the stated reasons is sufficient to support it." (Citations omitted; internal quotation marks omitted.) Christian Activities Council,Congregational v. Town Council, 249 Conn. 566, 584, 735 A.2d 231 (1999). "Under this traditional and long-standing scope of review, the proper focus of a reviewing court is on the decision of the zoning agency and, with regard to its factual determinations, on the evidence before it that supports, rather than contradicts, its decision." Caserta v. ZoningBoard of Appeals, 226 Conn. 80, 87, 626 A.2d 744 (1993). "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206,658 A.2d 559 (1995). "The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." Irwin v. Planning Zoning Commission, supra,244 Conn. 629.
 DISCUSSION
The ZBA found that Longstreth's appeal should be denied because nothing in the PDD regulations prohibited building a second detached dwelling on Parcel C, regulation 4.1.3 expressly lists an additional detached dwelling on the premises as a permitted use, no detailed plans are required for Parcel C under 4.7 and 5, and every attempt had been made to maintain the appearance of the farm. (ROR, Exh. 6.)
Longstreth appeals on the grounds that the ZBA erred in interpreting the regulations of PDD #5 so as to permit the construction of a second detached house on Parcel C, and therefore the ZBA's decision was legally erroneous, arbitrary and in abuse of the discretion vested in it. (Appeal, ¶¶ 10-11.) Specifically, Longstreth argues that the ZBA incorrectly interpreted subsections 4.1.2 and 4.1.3 of the PDD #5 zoning regulations because the ZBA interpretation fails to give effect to subsection 4.1.2, ignores the difference between the definition of CT Page 5569 "dwelling" and "dwelling unit," broadly construes the exception in 4.1.3 rather than narrowly constructing the subsection, is contrary to the intent of the PDD as a whole, and leads to bizarre results. (Longstreth's Brief, p. 11-19.) Longstreth also argues that the ZBA ignored the legislative history of PDD #5, and that even if a second detached house is permitted, the board erred in authorizing its construction in the proposed location. (Longstreth's Brief, pp. 19-22.)
The uses of Parcel C of PDD #5 are defined by the following regulations: "4.1 Permitted uses: Within Parcel C of PDD #5 land, buildings and other structures shall be used for the following purposes, and no other: 4.1.1: Farms, truck gardens, forestry and keeping of livestock and poultry as provided under the terms of A-7 of Schedule A, Section 3 of the Southbury zoning regulations; 4.1.2: A single detached dwelling for one (1) family and not more than one (1) such dwelling per lot, except as provided in 4.1.3 below; [and] 4.1.3: An additional dwelling unit for one family in a dwelling or other building, provided that the same is used only as a residence for one or more members of the family of persons directly employed in the operation of the uses in 4.1.1 above on Parcel C of PDD #5." (ROR, Exh. 37.) Regulation 1.7 provides: "A `dwelling' is a building containing one or more `dwelling units'. One or more buildings may be considered to be a `dwelling' if designed for occupancy, and so occupied, by one (1) family. . . . A `dwelling unit' is a building or a part of a building designed for occupancy, and so occupied, by one (1) `family'. . . . A `family' is a person, a group of related persons or a group of not more than six (6) persons who need not be so related, plus domestic servants or guests thereof, living as a single housekeeping unit maintaining a common household. A roomer or boarder shall not be considered a member of a `family' for the purpose of this definition." (ROR, Exh. 38.)
Longstreth argues that section 4.1.2 prohibits the construction of an additional single family residence, and that the exception provided in section 4.1.3 uses the phrase "dwelling unit" for the purpose of authorizing the construction of an apartment to be located in the existing dwelling or in another building. (Longstreth Brief, p. 11.) "In construing [zoning] regulations, the general rules of statutory construction apply. . . ." (Citation omitted.) Smith v. Zoning Board ofAppeals, 227 Conn. 71, 89, 629 A.2d 1089 (1993). "It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. Caltabiano v.Planning Zoning Commission, 211 Conn. 662, 666, 560 A.2d 975 (1989)."Casey v. Northeast Utilities, 249 Conn. 365, 370, 731 A.2d 294 (1999).
The language of subsection 4.1.2 clearly allows for not more than one single detached dwelling, except as is provided in subsection 4.1.3, CT Page 5570 which allows an additional dwelling unit to be used by family members or by employees of the farm. The language of regulation 1.7 differentiates between the terms "dwelling" and "dwelling unit" in that a "dwelling" may contain multiple dwelling units to be occupied by different families or multiple buildings that are occupied by a single family, but that a "dwelling unit" may only be occupied by one family, though it may be an entire building or part of a building. Therefore, the language of the regulations defining the uses of Parcel C clearly allows for two detached single family residences to be situated on the property, as long as there is only one family in each residence, as is defined in subsection 1.7, and that the "dwelling unit" only contain a family of persons directly employed in the operation of the uses of Parcel C.[4]
The term "dwelling unit" could have been interpreted so that an apartment could be constructed within a building that has uses other than occupancy, rather than mandating an apartment as the plaintiff suggests. Consequently, the ZBA's ruling gives effect to subsections 4.1. 2 and 4.1.3, and differentiates between the definitions of "dwelling" and "dwelling unit."
Furthermore, subsection 4.1.3 does not preclude a separate building. Subsection 4.1.3 does not use the term "dwelling," which would require that the building in which the family lived would be used solely for occupancy, and not for any other activity such as those associated with farming or the other approved uses of Parcel C. A "dwelling unit," however, may be located within a building with multiple uses, including occupancy. Contrary to Longstreth's position, this court finds that the language of subsection 4.1.3 of the zoning regulation for PDD #5 is unambiguous. Moreover, this court finds that the ZBA's interpretation is not contrary to the PDD as a whole, nor does it lead to bizarre results, as the plaintiff argues.
The purpose of Parcel C is to maintain the property's farm use in order to minimize the visual impact of the condominiums, provide scenic value, and, preserve the rural and open space character of the Town of Southbury. (ROR, Exh. 11, 12, 16.) The addition of a single family dwelling to be used as a residence for the family of those who are employed in the operation of the permitted uses of Parcel C does not, in and of itself, defeat the purpose of Parcel C. "In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." Rizzo Pool Co.v. Del Grosso, 240 Conn. 58, 78 n. 18, 689 A.2d 1097 (1997). There are other scenarios that may occur other than the possible outcomes offered by the plaintiff. For example, it is just as likely that the family of those who are employed in the operation of the farm might not object to moving out of one single family dwelling if the occupants of the other single family dwelling, the farmhouse, move. Therefore, the possible CT Page 5571 consequences of building an additional single family dwelling does not negate the determination of the ZBA.
Longstreth further argues that the ZBA ignored the legislative history of PDD #5 when the ZBA denied her appeal. Longstreth asserts that there were two proposals for PDD #5, the first of which was rejected, and that the second proposal was accepted because it emphasized that farmland and open space would be preserved. (Longstreth Brief, p. 20.) The second plan for PDD #5 not only maintained farmland, but also reduced the number of multi-family units, eliminated the dwellings on the eastern end of the property, included condominium open space, provided new architectural plans in a more traditional style, and contained DEP approval for on-site sewage disposal. (ROR, Exh. 47.) The second plan for PDD #5 also specifically states that the plan includes the addition of two units at the farm, though the plan does not specify the location of the units. (ROR, Exh. 47.)
Additionally, as previously stated, the language of subsections 4.1.2 and 4.1.3 is unambiguous. "In construing statutes, our goal is to ascertain and give effect to the apparent intent of the legislature. . . . We look first to the plain, unambiguous language of the statute. . . . Only if the language is ambiguous do we turn for guidance to the legislative history and the purpose the statute is intended to serve." (Citations omitted; internal quotation marks omitted.) Read v. Planning Zoning Commission,35 Conn. App. 317, 321-22, 646 A.2d 222 (1994). The ZBA was not required to look into the legislative history because the language of subsections 4.1.2 and 4.1.3 was plain and unambiguous. The language of the regulations do not specify the placement of an additional detached dwelling. Consequently, the ZBA's decision did not disregard the legislative history of PDD #5, nor did the ZBA err in authorizing its construction in the proposed location.
The court finds that there is sufficient evidence in the record to support the ZBA's denial of Longstreth's appeal. Adhering to the parameters of the regulations, the ZEO approved the Andricovichs' application to build a new detached dwelling on their property for the use of their family. Therefore, Longstreth's appeal is dismissed.
 CONCLUSION
For the above stated reasons, the appeal is dismissed.
 BY THE COURT PETER EMMETT WIESE, Judge
CT Page 5572