### JAMES SCHIANO *v.* BLISS EXTERMINATING COMPANY ET AL.
### (SC 16540)

Sullivan C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

Argued January 9—officially released April 9, 2002

*Karla A. Turekian,* assistant attorney general, with whom were *Richard R. Hine,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellant-appellee (defendant second injury fund).

*Richard G. Kascak, Jr.,* with whom, on the brief, was *Serge G. Mihaly,* for the appellee-appellant (plaintiff).

*Opinion*

KATZ, J. The principal issue in this appeal is whether the defendant second injury fund (fund) may be assessed

a penalty, pursuant to General Statutes § 31-303[1] of the Workers' Compensation Act (act), on attorney's fees it paid after the prescribed time limitation for "[p]ayments due under an award," when the fees were included in an award pursuant to General Statutes § 31-300.[2] The fund

[1] General Statutes § 31-303 provides: "Payments agreed to under a voluntary agreement shall commence on or before the tenth day from the date of agreement. Payments due under an award shall commence on or before the tenth day from the date of such award. Payments due from the Second Injury Fund shall be payable on or before the tenth business day after receipt of a fully executed agreement. Any employer who fails to pay within the prescribed time limitations of this section shall pay a penalty for each late payment, in the amount of twenty per cent of such payment, in addition to any other interest or penalty imposed pursuant to the provisions of this chapter."

[2] General Statutes § 31-300 provides: "As soon as may be after the conclusion of any hearing, but no later than one hundred twenty days after such conclusion, the commissioner shall send to each party a written copy of his findings and award. The commissioner shall, as part of the written award, inform the employee or his dependent, as the case may be, of any rights the individual may have to an annual cost-of-living adjustment or to participate in a rehabilitation program under the provisions of this chapter. He shall retain the original findings and award in his office. If no appeal from his decision is taken by either party within ten days thereafter, such award shall be final and may be enforced in the same manner as a judgment of the Superior Court. The court may issue execution upon any uncontested or final award of a commissioner in the same manner as in cases of judgments rendered in the Superior Court; and, upon the filing of an application to the court for an execution, the commissioner in whose office the award is on file shall, upon the request of the clerk of said court, send to him a certified copy of such findings and award. In cases where, through the fault or neglect of the employer or insurer, adjustments of compensation have been unduly delayed, or where through such fault or neglect, payments have been unduly delayed, the commissioner may include in his award interest at the rate prescribed in section 37-3a and a reasonable attorney's fee in the case of undue delay in adjustments of compensation and may include in his award in the case of undue delay in payments of compensation, interest at twelve per cent per annum and a reasonable attorney's fee. Payments not commenced within thirty-five days after the filing of a written notice of claim shall be presumed to be unduly delayed unless a notice to contest the claim is filed in accordance with section 31-297. In cases where there has been delay in either adjustment or payment, which delay has not been due to the fault or neglect of the employer or insurer, whether such delay was caused by appeals or otherwise, the commissioner may allow interest at such rate, not to exceed the rate prescribed in section 37-3a, as may be fair and

appeals[3] from the decision of the compensation review board (review board) that reversed the decision of the workers' compensation commissioner for the fourth district (commissioner), which had denied the claim of the plaintiff, James Schiano, for an assessment of a 20 percent penalty against the fund on its late payment of

reasonable, taking into account whatever advantage the employer or insurer, as the case may be, may have had from the use of the money, the burden of showing that the rate in such case should be less than the rate prescribed in section 37-3a to be upon the employer or insurer. In cases where the claimant prevails and the commissioner finds that the employer or insurer has unreasonably contested liability, the commissioner may allow to the claimant a reasonable attorney's fee. No employer or insurer shall discontinue or reduce payment on account of total or partial incapacity under any such award, if it is claimed by or on behalf of the injured person that his incapacity still continues, unless such employer or insurer notifies the commissioner and the employee of such proposed discontinuance or reduction in the manner prescribed in section 31-296 and the commissioner specifically approves such discontinuance or reduction in writing. The commissioner shall render his decision within fourteen days of receipt of such notice and shall forward to all parties to the claim a copy of his decision not later than seven days after his decision has been rendered. If the decision of the commissioner finds for the employer or insurer, the injured person shall return any wrongful payments received from the day designated by the commissioner as the effective date for the discontinuance or reduction of benefits. Any employee whose benefits for total incapacity are discontinued under the provisions of this section and who is entitled to receive benefits for partial incapacity as a result of an award, shall receive those benefits commencing the day following the designated effective date for the discontinuance of benefits for total incapacity. In any case where the commissioner finds that the employer or insurer has discontinued or reduced any such payment without having given such notice and without the commissioner having approved such discontinuance or reduction in writing, the commissioner shall allow the claimant a reasonable attorney's fee together with interest at the rate prescribed in section 37-3a on the discontinued or reduced payments."

Section 31-300 was amended in 2001 to reflect gender neutral language and a minor substantive change that is not relevant for purposes of this appeal. See Public Acts 2001, No. 01-22, § 3. References herein are to the 2001 revision of the statute.

[3] The fund appealed from the review board's decision to the Appellate Court pursuant to General Statutes § 31-301b. We then transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

attorney's fees. We conclude that the phrase "payments due under an award" within the meaning of § 31-303 does not encompass attorney's fees included in an award. Accordingly, we hold that such fees are not subject to a penalty as a late payment under that section. We therefore reverse the decision of the review board.

The record reveals the following undisputed facts and procedural history. On February 25, 1986, the plaintiff sustained an injury to his lower back in an accident that occurred during the course of his employment with the defendant Bliss Exterminating Company (company). Thereafter, the plaintiff and the company entered into a voluntary agreement establishing a base compensation rate for the plaintiff's disability and a dependency allowance, which the commissioner approved on June 6, 1986. On August 12, 1988, liability was transferred from the company's insurer, Aetna Life and Casualty Company, to the fund, pursuant to General Statutes § 31-349. On April 13, 1989, the commissioner approved a second voluntary agreement that established that the plaintiff had a 50 percent permanent partial disability of his back, which entitled him to 260 weeks of compensation at the same base rate as the prior agreement. The agreement further established that specific payments[4] would commence on February 21, 1989. In April, 1989, the commissioner issued two separate orders of commutation of thirty weeks of compensation, accordingly reducing the plaintiff's entitlement to 200 weeks. See General Statutes § 31-302.

---

[4] Specific payments refer to compensation relating to a permanent partial disability. See generally A. Sevarino, Connecticut Workers' Compensation After Reforms (2d Ed. 1999) § 3.54. "Specific benefits are benefits for the loss or loss of the use of specific body parts. . . . These [specific] benefits . . . are not paid as compensation for loss of earning power but to compensate the injured employee for the incapacity through life because of the loss or loss of use of the body member in question." (Citation omitted; internal quotation marks omitted.) *Morgan* v. *East Haven*, 208 Conn. 576, 584, 546 A.2d 243 (1988).

During 1989, the plaintiff worked periodically at other jobs, but was unable to continue after September of that year because of severe pain, and thereafter was bedridden for nine weeks. The plaintiff then made a request for additional compensation, pursuant to General Statutes § 31-315, after an authorized treating physician determined that the plaintiff was totally disabled. On November 15, 1991, the commissioner issued findings and an award, concluding that, as of October 15, 1989, the plaintiff had become totally disabled as a result of his prior, compensable injury and that he was entitled to temporary total disability benefits as of that date. The commissioner found that the fund had made specific payments to the plaintiff from January, 1990, until July 28, 1990. The commissioner further found, however, that the plaintiff had not received either specific payments or temporary total disability payments for the time period between February 21, 1989, the date on which specific payments were due to commence under the terms of the second voluntary agreement, and the January, 1990 payment.[5]

On February 7, 1992, the plaintiff received a check for $3286.70 from the fund. On February 23, 1992, the

[5] The record indicates that the fund's nonpayment of specific disability payments was due to an agreement that had been executed with the plaintiff after he had received $30,000 in settlement of a third party action related to his back injury. Some time prior to the transfer of liability from the company's insurer to the fund in August, 1988, the plaintiff and his wife initiated that action, claiming that the third party's negligence had caused the plaintiff's injuries and, in turn, caused the wife to suffer a loss of consortium. The fund and the company intervened in that action. An agreement executed with the plaintiff entitled the fund to a moratorium on the payment of benefits for 108 weeks of specific disability benefits, which was equivalent to the plaintiff's $30,000 settlement. The fund did not know until the plaintiff sought additional compensation in 1991 that he was totally disabled as of October, 1989. Disagreements between the plaintiff and the fund regarding the effect of the moratorium agreement ultimately were resolved in the fund's favor. See Schiano v. Bliss Exterminating Co., 57 Conn. App. 406, 750 A.2d 1098 (2000). That issue, however, has no bearing on the present appeal.

fund commenced making temporary total disability payments, along with appropriate cost of living increases and dependency allowances. In 1993, the plaintiff made a claim for the temporary total disability benefits he was owed from October, 1989, until February, 1992. After hearings on the matter, the commissioner issued his findings and award in September, 1993, which, in essence, reiterated what he had determined in November, 1991, namely, that the plaintiff was entitled to the payment of the benefits as of October, 1989.

In 1995, after still having failed to receive payment for those benefits, the plaintiff filed another request with the commissioner for an award of such payment, along with a claim, pursuant to § 31-303, for a 20 percent penalty on the award due to the late payments. See footnote 1 of this opinion. On April 8, 1996, the commissioner issued his findings and award, concluding that the plaintiff was owed temporary total disability payments in the amount of $53,859.29, dating back to October 15, 1989. He further found that the fund's failure to make the payments "was an undue delay in adjustments of compensation and [accordingly] the [plaintiff] is entitled to a reasonable attorney's fee in the amount of $25,000" pursuant to § 31-300. Finally, the commissioner awarded to the plaintiff the interest due on the award, but denied the plaintiff's request for the assessment of a 20 percent penalty on the award against the fund.

The fund appealed from the commissioner's decision to the review board, claiming, inter alia, that the commissioner had abused his discretion in ordering the fund to pay the attorney's fees and in not allowing the fund to submit endorsed checks as evidence that it had made certain payments to the plaintiff.[6] The plaintiff

---

[6] The fund also claimed that the plaintiff's attorney had failed to meet his burden of proof to substantiate the amount of the fees and that the commissioner improperly had refused to allow the fund to introduce endorsed checks as evidence to impeach the plaintiff's credibility. In addi-

filed a cross appeal challenging, inter alia, the commissioner's decision not to award the 20 percent penalty pursuant to § 31-303.[7] One year later, the review board granted the plaintiff's motion to dismiss the fund's appeal due to its failure to prosecute with due diligence, and also awarded additional attorney's fees to the plaintiff. The plaintiff then withdrew his cross appeal. The fund thereafter made three separate payments to the plaintiff: one for the disability benefits; one for the interest owed on the award; and one for the attorney's fees. The plaintiff received the benefits and attorney's fees payments thirty-seven days after the statutory deadline; see footnote 1 of this opinion; and received the interest payment seventy-one days late. The plaintiff then filed a claim with the commissioner for a 20 percent penalty on the late payments pursuant to § 31-303.

At a hearing before the commissioner in January, 1999, the fund claimed that it was not subject to the penalty provision because it was not an "employer" within the meaning of § 31-303. In July, 1999, prior to the commissioner's decision on the plaintiff's penalty claim, this court issued its decision in *Casey* v. *Northeast Utilities*, 249 Conn. 365, 377, 731 A.2d 294 (1999), wherein we held "that § 31-303 imposes a time limitation upon the fund, as well as upon employers, for making payments pursuant to an award." Moreover, we concluded therein that, "[b]ecause the fund essentially

tion, the fund claimed that the commissioner improperly had issued his decision prior to ruling on a motion to open and modify the 1991 and 1993 findings and award that the fund had filed on November 9, 1995. The fund had sought to modify the award based on payments that it claimed it had made to the plaintiff that had not been taken into account in the findings and award. The commissioner denied the motion to open on May 16, 1996.

[7] In addition, the plaintiff claimed that the commissioner improperly had calculated the interest due on the temporary total disability benefits by using a simple interest rate of 10 percent per year and improperly had determined that the plaintiff was not entitled to reimbursement for expert accountant fees that he had incurred.

stands in the shoes of the employer for purposes of payment of compensation benefits to the injured employee . . . the penalty provision of § 31-303 is equally applicable to the fund." Id. Shortly thereafter, upon notice from the plaintiff of our decision in *Casey*, the fund issued a check to the plaintiff for the full amount of the penalty. The plaintiff then sent a letter to the commissioner notifying him that the claim had been settled. On August 6, 1999, the same day that the plaintiff's letter was received at the commissioner's office, the commissioner issued his decision ordering that the fund pay a 20 percent late penalty on the $53,859.29 benefits award.[8] The commissioner denied the plaintiff's request for a penalty on the attorney's fees, but ordered that interest be assessed on the fees at the statutory rate. The plaintiff subsequently filed motions to reargue and to vacate the August 6, 1999 decision on the ground that the commissioner had been notified prior to that decision that the claim had been settled. The commissioner denied both motions.

The plaintiff then filed a petition for review with the review board, claiming that the commissioner: (1) lacked jurisdiction to render his August, 1999 decision; and (2) improperly had determined that the plaintiff was not required, pursuant to § 31-303, to assess a 20 percent penalty against the fund for its late payment of the attorney's fees. The review board rejected the plaintiff's first claim, but agreed that the commissioner was required, pursuant to the statute, to assess the penalty on the attorney's fees. The review board determined that any late "[payment] due under an award," regardless of whether it was a payment of disability benefits or payment of attorney's fees, fell within the plain language of the penalty provision of § 31-303. Although the review board noted that it "would be sur-

---

[8] The commissioner determined, however, that the penalty should be assessed only on the principal amount, and not on the interest.

prised if the legislature truly intended to offer attorneys the protection of a 20 [percent] penalty," it nevertheless concluded that the commissioner was bound to assess the penalty on the attorney's fees because of the unambiguous statutory language and the legislative history of the bill adding the penalty to § 31-303. The fund then filed this appeal. The plaintiff filed a cross appeal, claiming that the review board improperly had determined that the commissioner had not abused his discretion by denying the plaintiff's motion to reargue and motion to vacate the August 6, 1999 decision.

I

Before considering the principal issue in this appeal, we first address the jurisdictional question raised in the plaintiff's cross appeal. Specifically, the plaintiff claims that the commissioner should have granted the aforementioned motions because the plaintiff had notified the commissioner before he issued his decision that the claim had been rendered moot.

The following additional facts are relevant to our resolution of the plaintiff's cross appeal. As we previously have noted, the fund's position before the commissioner was that it was not subject to the penalty provision because it was not an employer within the meaning of § 31-303. At a January, 1999 formal hearing held prior to the commissioner's decision, the parties agreed that the decision in *Casey*, then pending before this court, would resolve the issue. After our decision in *Casey* was released, the plaintiff's attorney notified the fund that it was responsible for additional payments of $17,269.93, an amount equivalent to a 20 percent penalty on the *entire* award, that is, the disability compensation payment, *the attorney's fees and the interest.* Thereafter, the fund issued a check to the plaintiff, dated July 19, 1999, in that amount.

On August 5, 1999, the plaintiff's attorney wrote to the commissioner to notify him that the fund had "made payments totaling $17,269.93" and that, as a consequence, "the issues to be addressed in the formal hearing before you have been rendered moot and there is no need of a finding and award." The letter was stamped received by the workers' compensation district office on August 6, 1999.[9] The commissioner's decision was issued that same day, assessing the 20 percent penalty only on the late payment of the disability benefits.

The plaintiff then filed with the commissisoner motions to reargue and to vacate the decision. He also submitted a letter to the commissioner indicating that, in addition to the August 5, 1999 letter, he previously had informed the commissioner's paralegal "that the matter had been settled."[10] The commissioner denied both motions. The plaintiff then filed the petition for review with the review board, challenging the commissioner's jurisdiction to render his August 6, 1999 decision and his denial of the plaintiff's request for the penalty on the attorney's fees.[11]

The review board determined that the claim had not been rendered moot and, therefore, that the commissioner had jurisdiction to decide whether the fund was required to pay the penalty on the attorney's fees pursu-

---

[9] The commissioner himself, to whom the letter was addressed, received the letter four days later at the district office to which he then was assigned.

[10] The plaintiff claimed before the review board that he had telephoned the commissioner's paralegal to apprise the commissioner of the settlement on August 5, 1999, the same day on which he had mailed the letter to the commissioner. The review board noted, however, that there was no documentation of the telephone call in the record.

[11] It does not appear from the record that the plaintiff ever contended before the commissioner that he was entitled to receive the 20 percent penalty on the interest awarded. The plaintiff limited his appeal to the review board to the issues of whether the commissioner had jurisdiction to render his decision and whether he improperly had determined that the plaintiff was not entitled to the penalty on the attorney's fees.

ant to § 31-303. The review board reasoned: "Under the [act], an agreement between parties concerning the payment of disability benefits, medical expenses, or attorney's fees is subject to the approval of the trial commissioner. . . . Once the parties have invoked the jurisdiction of this agency, any resolution of pending issues involving the payment of compensation must be ratified by the commissioner in order for it to constitute a binding judgment. A settlement is not self-actuating, and does not by its mere existence implicate the trier's subject matter jurisdiction. . . . Instead, the parties must present their contractual compromise to judicial authority, so that he or she may review the agreement and consider entering judgment accordingly. . . . This requires that the parties successfully communicate their intent to settle the case before the commissioner releases his decision." (Citations omitted.) Because there was "no demonstrable proof that the trial commissioner knew or should have known of the parties' putative settlement before he issued his decision," the review board concluded that the commissioner had jurisdiction to issue his decision.

We agree with the well reasoned analysis of the review board. See *Muldoon* v. *Homestead Insulation Co.*, 231 Conn. 469, 480, 650 A.2d 1240 (1994) ("[a]s in the case of a voluntary agreement, no stipulation is binding until it has been approved by the commissioner"); see also General Statutes § 31-296 (requiring commissioner's approval of voluntary agreements); General Statutes § 31-296a (requiring commissioner's approval prior to employer's discontinuance or reduction of payments under oral agreement if employee claims continuing disability). Moreover, although the plaintiff may have considered the claim settled upon receipt of the fund's payment, the fund apparently did not view the payment in the same manner. At oral argument before this court, the fund represented that it had

made the payment upon the plaintiff's demand only so as to avoid the risk of incurring additional penalties for late payments should the commissioner decide in the plaintiff's favor. We conclude, therefore, that the review board properly determined that the commissioner had jurisdiction to issue the August, 1999 decision and, accordingly, that he did not abuse his discretion by denying the plaintiff's motion to reargue and his motion to vacate.

## II

We next address the principal issue in this appeal, namely, whether the review board properly determined that the commissioner was required, pursuant to § 31-303, to assess a 20 percent penalty on the attorney's fees the fund paid after the prescribed time limitation for payments due under an award when the fees were included in an award pursuant to § 31-300. The fund claims that the fees are excluded from the ambit of the penalty provision because they already were assessed as a penalty for an earlier delay of payments to the plaintiff. The threshold issue we must decide, however, is whether attorney's fees included in an award pursuant to § 31-300 constitute a "payment due under an award" as set forth in § 31-303. We conclude that attorney's fees are not encompassed within the meaning of that phrase. Accordingly, the timing of the fund's payment of the attorney's fees did not trigger the penalty provision of § 31-303.

We begin by setting forth the relevant standard of review. "[A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We

have determined, therefore, that the traditional defer-
ence accorded to an agency's interpretation of a statu-
tory term is unwarranted when the construction of a
statute . . . has not previously been subjected to judi-
cial scrutiny [or to] . . . a governmental agency's time-
tested interpretation . . . ." (Citations omitted; inter-
nal quotation marks omitted.) *Hartford* v. *Hartford
Municipal Employees Assn.*, 259 Conn. 251, 261–62,
788 A.2d 60 (2002). In the present case, neither party
contends that the review board's interpretation of the
statute is time-tested. We exercise plenary review,
therefore, in determining whether attorney's fees
included in an award pursuant to § 31-300 constitute a
"payment due under an award," the late payment of
which would trigger the penalty provision in § 31-303.

We approach this question according to well estab-
lished principles of statutory construction. "The pro-
cess of statutory interpretation involves a reasoned
search for the intention of the legislature. *Frillici* v.
*Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). In
other words, we seek to determine, in a reasoned man-
ner, the meaning of the statutory language as applied
to the facts of this case, including the question of
whether the language actually does apply. In seeking
to determine that meaning, we look to the words of the
statute itself, to the legislative history and circum-
stances surrounding its enactment, to the legislative
policy it was designed to implement, and to its relation-
ship to existing legislation and common law principles
governing the same general subject matter." (Internal
quotation marks omitted.) *Bender* v. *Bender*, 258 Conn.
733, 741, 785 A.2d 197 (2001).

Section 31-303 is comprised, in essence, of two parts:
the first part, which prescribes due dates for payments
(due date provision) and a second part, which imposes
a penalty on payments made after the due date (penalty
provision). The statute provides in relevant part: "*Pay-*

*ments due under an award* shall commence on or before the tenth day from the date of such award. . . . Any employer who fails to pay within the prescribed time limitations of this section *shall pay a penalty for each late payment,* in the amount of twenty per cent of such payment, in addition to any other interest or penalty imposed pursuant to the provisions of this chapter." (Emphasis added.) General Statutes § 31-303. In the present case, the commissioner assessed the attorney's fees pursuant to his authority under § 31-300 after making a determination that the fund had delayed unduly in making adjustments of compensation to the plaintiff. Section 31-300 provides in relevant part: "In cases where, through the fault or neglect of the employer or insurer, adjustments of compensation have been unduly delayed . . . the commissioner *may include in his award* interest at the rate prescribed in section 37-3a and *a reasonable attorney's fee* . . . ." (Emphasis added.) In the absence of evidence to the contrary, statutory terms are given their common meaning. *State* v. *Scott,* 256 Conn. 517, 532, 779 A.2d 702 (2001). Under a plain reading of the statutory language, the attorney's fees in the present case were "included" in the award and, therefore, the payment of such fees would be a "payment due under an award," as that phrase is used in § 31-303.

In addition, another provision in the act provides support for the proposition that attorney's fees may be a payment due under an award. General Statutes § 31-327 (a) provides in relevant part: "Whenever any fees or expenses are, under the provisions of this chapter, to be paid by the employer or insurer and not by the employee, the commissioner *may make an award* directly in favor of the person entitled to the fees or expenses . . . . The award may be combined with an award for compensation in favor of or against the injured employee or the dependent or dependents of a

deceased employee or may be the subject of an award covering only the fees and expenses." (Emphasis added.) Consequently, the legislature determined that fees could be due under an award, regardless of whether that award was made independent of, or in combination with, a compensatory award. In accordance with the plain meaning of the statutory language, therefore, attorney's fees that have been included in an award pursuant to § 31-300 would be a "payment due under an award" within the meaning of that phrase in § 31-303.

Our inquiry to determine legislative intent, however, does not end with the language of the statute. "In resolving this dispute over the proper construction of the statute, our fundamental objective . . . is to ascertain and give effect to the apparent intent of the legislature . . . . [W]e will not undertake an examination of [§ 31-303] with blinders on regarding what the legislature intended [it] to mean. . . . Accordingly, our analysis of [§ 31-303] is not limited solely to the words of the statute." (Citations omitted; internal quotation marks omitted.) *Sweetman* v. *State Elections Enforcement Commission*, 249 Conn. 296, 306, 732 A.2d 144 (1999).

The legislative genealogy of § 31-303 and related provisions of the act indicate that, although attorney's fees may be included in an award, the legislature did not intend for those fees to be encompassed within the meaning of the phrase "payments due under an award," such that the late payment of those fees would trigger the penalty provision. The original version of § 31-303, enacted in 1959, prescribed only a due date for payments and did not contain a penalty provision. See Public Acts 1959, No. 580, § 21. That statute provided in relevant part: "Any other provisions notwithstanding, any *compensation* payable under the terms of an award or voluntary agreement shall be paid within ten days after it becomes due. . . ." (Emphasis added.) General Statutes (Sup. 1959) § 31-163a. At that time, the statute

did not define the term "compensation."[12] The term was defined, however, under the federal workers' compensation statutes; Longshore and Harbor Workers' Compensation Act, 33 U.S.C. 901 et seq. (federal act); which defined compensation as "the money allowance payable to an employee or to his dependents as provided for in this chapter, and includes funeral benefits provided therein." 33 U.S.C. § 902 (12).[13] Even if we were to assume that the legislature intended a broader definition than the one set forth in the federal act, because the commissioner had no authority at that time to order the payment of attorney's fees, such fees could not have been included within the meaning of the term compensation.[14]

In 1961, the state act was repealed in its entirety and replaced with new provisions. The legislature replaced what was then a single sentence prescribing the due dates with what are currently the first two sentences of § 31-303: "Payments agreed to under a voluntary agreement shall commence on or before the tenth day from the date of agreement. Payments due under an

[12] The term "compensation" was not defined in the act until 1991; see Public Acts 1991, No. 91-32, § 1; and, after undergoing a few alterations; see Public Acts 1991, No. 91-339, § 1; Public Acts 1992, No. 92-31, § 1; was first codified in the 1993 revision of the General Statutes. Compensation presently is defined as "benefits or payments mandated by the provisions of this chapter, including, but not limited to, indemnity, medical and surgical aid or hospital and nursing service required under section 31-294d and any type of payment for disability . . . death benefit [or] funeral expense . . . ." General Statutes § 31-275 (4).

[13] The definition of compensation under the federal act has remained unchanged since the act's inception in 1927. See Longshoremen's and Harbor Workers' Compensation Act of 1927, c. 509, § 2, 44 Stat. 1424.

[14] Although the commissioner has had the authority to approve attorney's fee agreements between claimants and their attorneys since the state act's inception; see General Statutes (1949 Rev.) § 7457; the commissioner did not have authority to assess attorney's fees until 1967. See Public Acts 1967, No. 842, § 10 (authorizing commissioner to "allow to the claimant a reasonable attorney's fee" upon determination that employer or insurer unreasonably contested liability).

award shall commence on or before the tenth day from the date of such award." See Public Acts 1961, No. 491, § 26. The legislative history of the bill underlying Public Act 491 indicates that, although the word "compensation" no longer modified "payments," the legislature's sole intention in making the revision was to clarify the due dates of the payments and not to expand the scope of the provision.[15] Moreover, the commissioner still lacked statutory authority to award attorney's fees. A 1989 amendment added what is the third sentence of § 31-303, which prescribes the time limitation for payments due under an agreement with the fund. Public Acts 1989, No. 89-70, §§ 1, 2.

In 1993, the legislature added the last sentence of § 31-303, the penalty provision. Public Acts 1993, No. 93-228, § 14. The legislative history of the bill underlying Public Act 93-228 indicates the legislature's continued intention to maintain the scope of the due date provision as limited to payments of compensation. Both the fiscal impact statement and the summary included with the bill referred to the penalty as addressing "Late Payment of Worker's Compensation Benefits."[16] Representative

[15] The bill introducing the 1961 amendment contained the following notation: "This provides what it is thought the first sentence of Sec. 31-163a [the 1959 version of the statute] was intended to provide." House Bill No. 2391, 1961 Sess., § 26, p. 26. The only explanation of the change during legislative debates was the following remarks by Representative John A. Rand: "There was a great ambiguity in the present act because the word due was used when the—due—when the award was due. Nobody can . . . say when they are due legally. That has been clarified on page 15, Section 26 . . . . That is a whole new section, to qualify when payments become due." 9 H.R. Proc., Pt. 7, 1961 Sess., p. 3463.

[16] The fiscal impact statement contained the following explanation: "The bill also increases penalties for failure to carry workers' compensation coverage, intentional underpayment of insurance premiums, *and late payment of benefits.*" (Emphasis added.) House Bill No. 7172, 1993 Sess., p. 69. The summary of the bill provided: "Late Payment of Workers' Compensation Benefits. The law requires that workers' compensation payments begin within 10 days after a voluntary agreement or award (the Second Injury Fund has 10 business days). This bill imposes a 20 [percent] penalty, over

Michael Lawlor, the bill's sponsor, gave the following explanation of the bill during debates in the House of Representatives: "There is a 20 [percent] penalty [in the bill] for insurance companies or employers who make *late payments of doctor bills* or benefits for wage replacement after they have been ordered to be made by the workers' [compensation] commission or after they were part of a voluntary agreement by the employer. In other words, there are many informal and formal hearings at the workers' [compensation] commission where insurance company lawyers or lawyers promise to make a payment within a few days, or who are ordered to make that payment. If they don't make the payment . . . there are no effective penalties on the books today. This imposes a 20 [percent] penalty *going directly to the claimant* for those late payments, plus interest." (Emphasis added.) 36 H.R. Proc., Pt. 18, 1993 Sess., pp. 6253–54.

Representative Lawlor's reference to "late payments of doctor bills" raises the question of whether the bill was intended to expand the meaning of "payments" beyond payments of compensation owed to the claimant. Reference back to the definition of compensation, however, which includes payments due for medical expenses, readily explains the impetus for this comment. See footnote 12 of this opinion. Therefore, for example, an employer may be liable for medical expenses that the employee has incurred due to the employer's delay or neglect in providing services and, as such, may be ordered to compensate an employee for such expenses. See General Statutes § 31-294d (e);[17]

and above interest penalties, for each late payment." (Emphasis in original.) Id., p. 81.

[17] General Statutes § 31-294d (e) provides: "If the employer fails to promptly provide a physician or surgeon or any medical and surgical aid or hospital and nursing service as required by this section, the injured employee may obtain a physician or surgeon, selected from the approved list prepared by the chairman, or such medical and surgical aid or hospital and nursing service at the expense of the employer."

*Doe* v. *Stamford*, 241 Conn. 692, 696, 699 A.2d 52 (1997) (employer liable for laboratory and medical expenses claimant had incurred); see also General Statutes § 31-312 (requiring employer to reimburse injured employee for expenses employee incurred for transportation to and from medical treatment); cf. *Lazarus* v. *Chevron USA, Inc.*, 958 F.2d 1297, 1300 (5th Cir. 1992) (under federal act, medical benefits may constitute compensation when award is obtained by employee for reimbursement of money expended due to employer's neglect to authorize treatment).

Moreover, the policy considerations motivating the 1993 amendments indicate that the legislature did not intend to expand the scope of payments subject to the due date provision to include payments made directly to doctors or attorneys. The bill underlying those amendments proposed sweeping reforms in an effort to reduce the cost of the workers' compensation system after businesses complained that excessive costs were driving businesses out of the state and to ensure that the system worked as effectively as possible. See 36 H.R. Proc., supra, pp. 6142–46, remarks of Representative Lawlor. As part of those reforms, the legislature included a provision authorizing the commissioner to promulgate a maximum fee schedule for practitioners, including doctors and attorneys. See General Statutes § 31-280 (b) (11) (added by Public Acts 1993, No. 93-228, § 4).[18] Therefore, the 1993 bill was directed at reducing the cost of such fees. Reading the statute to expand the meaning of payments, thereby subjecting practitioners' fees to a 20 percent penalty, runs counter to that intent.

[18] It is noteworthy that, pursuant to this authority, the commissioner enacted guidelines that require interest to be paid on doctor's fees paid more than *sixty* days after they become due; see Connecticut Practitioner Fee Schedule (2001), General Guidelines, § II (E), p. 6; not after the *ten* day period prescribed under § 31-303.

Finally, it is important to note that the reading supported by the legislative history, namely, that "payments due under an award" means payments of compensation, gives a uniform meaning to the word "payments" in the first three sentences in § 31-303. In addition to prescribing a ten day time limitation for payments due under an award, § 31-303 prescribes the same time limitation for "[p]ayments agreed to under a voluntary agreement" and "[p]ayments due from the Second Injury Fund . . . [under] a fully executed agreement." In other words, these sentences each prescribe a due date for payments from either a voluntary agreement, an award, or a fully executed agreement with the fund. The subject of a voluntary agreement or a fully executed agreement is the payment of compensation for the claimant's disability and related medical care. See General Statutes § 31-296 (voluntary "agreement in regard to compensation"); General Statutes § 31-315 (modification of "award of, or voluntary agreement concerning, compensation"); General Statutes § 31-349 (a) (fund liability for "compensation for . . . [1] . . . entire amount of disability . . . and [2] necessary medical care"); Regs., Conn. State Agencies § 31-354-9 (transfer agreement of liability to fund from voluntary agreement regarding compensation); Regs., Conn. State Agencies § 31-354-1 (defining compensation, voluntary agreement and transfer agreement). It is clear by resort to the statutes and regulations that payments under voluntary agreements and payments under fully executed agreements mean the same thing—payments of compensation. Ordinarily, "where the legislature uses the same phrase it intends the same meaning." *Link* v. *Shelton*, 186 Conn. 623, 627, 443 A.2d 902 (1982); see *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 431, 572 A.2d 951 (1990) ("[i]t is a familiar principle of statutory construction that where the same words are used in a statute two or more times they will ordinarily be given

the same meaning in each instance" [internal quotation marks omitted]). In the absence of the use of different words to describe payments due under an award, vis-a-vis due dates, we presume that the legislature intended that phrase to have the same meaning as the other provisions, namely, payments of compensation.

It seems evident, therefore, that the legislature intended for the word "payments" as used in § 31-303 to mean payments of compensation. There is nothing in the legislative history during the forty years since that section was enacted that evinces an affirmative intent by the legislature to expand the meaning of the term beyond its original scope. In determining the meaning of a statute, however, we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. See *Schroeder* v. *Triangulum Associates*, 259 Conn. 325, 339, 789 A.2d 459 (2002) ("[w]e have previously recognized that our construction of the [act] should make every part operative and harmonious with every other part insofar as is possible"); *Sweetman* v. *State Elections Enforcement Commission*, supra, 249 Conn. 307 ("[w]e consider the statute as a whole with a view toward reconciling its parts in order to obtain a sensible and rational overall interpretation").

The other provisions in the act that refer to the awarding of fees indicate that the legislature did not intend for its use of the phrase "include in [an] award" in § 31-300 to trigger the due date provision and, hence, the penalty provision of § 31-303. There are several provisions in the act that authorize the commissioner to order an employer or insurer to pay attorney's fees.[19]

---

[19] See General Statutes § 31-290a (b) (employee "shall be awarded" attorney's fees in cases of retaliatory discharge or other discrimination action); General Statutes § 31-296 (employer "shall be required to pay" attorney's fees when employer has discontinued or reduced payments under voluntary agreement without commissioner's approval); General Statutes § 31-300 (commissioner "may allow" attorney's fees when employer has unreasonably contested liability and "shall allow" attorney's fees when employer has

Section 31-300 is the only one, however, that expressly authorizes such fees to be "included" in an award. See General Statutes (Rev. to 1989) § 31-300. At the time the legislature proposed the bill to add this provision, it indicated in the bill's analysis that the "[c]ommissioners may already *award* attorneys' fees to a claimant when his employer or insurer has unreasonably contested liability." (Emphasis added.) House Bill No. 5852, 1988 Sess., p. 7. The existing authority to which that statement referred was another provision in § 31-300 enacted by No. 75-122 of the 1975 Public Acts that authorized the commissioner to "*allow* to the claimant a reasonable attorney's fee" when the commissioner had found that the employer or insurer unreasonably had contested litigation. (Emphasis added.) General Statutes (Rev. to 1977) § 31-300. That statement appears to reflect, therefore, the legislature's view that there was not a significant difference between *including* fees in an award and *allowing* such fees.

Indeed, from a policy perspective, there is no reason to distinguish between attorney's fees included in an award due to an employer's undue delay of payments and attorney's fees allowed due to an employer's unreasonable contesting of liability. "[T]he general policies advanced by our workers' compensation system and the penalty provision of § 31-303 are aligned to achieve an important goal: to provide the injured employee with prompt access to compensation." *Casey* v. *Northeast Utilities*, supra, 249 Conn. 383. There is no difference in the delay of compensation payments, and, accordingly, no difference in harm to a *claimant*, regardless of whether an employer causes the delay by unduly delaying payments or by unreasonably contesting liabil-

discontinued or reduced payments due under award without commissioner's approval).

ity.[20] Therefore, it would not further the policy concerns underlying the act to ascribe a different meaning to the concept of "including" fees in an award, as opposed to "allowing" such fees in an award, so as to trigger the penalty provision. Cf. *Paternostro* v. *Edward Coon Co.*, 217 Conn. 42, 49, 583 A.2d 1293 (1991) (interpreting phrase in statute contrary to plain meaning because that approach would create result inconsistent with purposes of act).

Moreover, ascribing special import to the legislature's use of the phrase "include in [an] award" in § 31-300 is inconsistent with the meaning of the word "award" under the act. Any time the commissioner orders an employer or insurer to make payments, that order takes the form of an award, as noted by the review board in the present case, which held that the term award "refers to orders that require [an employer or insurer] to assume liability for costs incurred by the claimant as a result of his compensable injury and the subsequent maintenance of his claim." As we have noted previously, § 31-327 (a) provides that *whenever* the commissioner may order an employer or insurer to pay attorney's fees, he or she may make an award of such fees. "[I]n the absence of persuasive evidence to the contrary, we may presume that a word used in different parts of the same statutory scheme has the same meaning." *State* v.

---

[20] A simple hypothetical illustrates this point. Claimant A and claimant B suffer a compensable injury on January 1, 2000. On July 1, 2000, claimant A and her employer enter into a voluntary agreement regarding compensation. Claimant A's employer, however, does not make the payments. Claimant B's employer contests liability for compensation payments and also fails to make payments. Claimant A and claimant B both file claims with the commissioner. On July 1, 2001, a workers' compensation commissioner makes an award of compensation to claimant A and includes in the award attorney's fees due to the employer's undue delay in making payments of compensation. On that same date, the commissioner makes an award of compensation to claimant B and allows attorney's fees because her employer unreasonably contested liability. Thus, regardless of the reason for the employer's delay, the harm to the claimant is the same.

*Rivera*, 250 Conn. 188, 201, 736 A.2d 790 (1999). Applying this principle of statutory construction, *any* attorney's fees the employer is ordered to pay, not just those fees included in an award pursuant to § 31-300, constitute a "payment due under an award" for purposes of § 31-303. This result evinces that the phrase "include in [an] award" has no special meaning, and that the argument predicated on the significance of that phrase collapses onto itself.

In sum, we recognize that the plain language of §§ 31-300 and 31-303 read together suggests that the late payment of attorney's fees included in an award pursuant to § 31-300 is subject to a 20 percent penalty under § 31-303. Our fundamental objective, however, is to ascertain and give effect to the apparent intent of the legislature. *Hartford* v. *Hartford Municipal Employees Assn.*, supra, 259 Conn. 263. "We have long followed the guideline that [t]he intent of the lawmakers is the soul of the statute, and the search for this intent we have held to be the guiding star of the court. It must prevail over the literal sense and the precise letter of the language of the statute. . . . *Bridgeman* v. *Derby*, 104 Conn. 1, 8, 132 A. 25 (1926)." (Internal quotation marks omitted.) *Sweetman* v. *State Elections Enforcement Commission*, supra, 249 Conn. 307. The legislative history of § 31-303 and the language of other provisions of the act relating to the commissioner's authority to make an award of fees constitutes compelling evidence that, despite the statutory language, the legislature did not intend for attorney's fees to be subject to the penalty provided for in § 31-303. We conclude, therefore, that the phrase "payments due under an award" is limited to payments of compensation due under an award. Accordingly, the fund's payment of attorney's fees was not subject to the due date provision of § 31-303 and, therefore, cannot be subject to the 20 percent penalty in that section.

We recognize that, under our interpretation of § 31-303, only payments of compensation have a statutorily prescribed due date. Consequently, there is no due date prescribed for payments of attorney's fees included in an award when the employer or insurer has unduly delayed payments to the claimant under § 31-300. We note, however, that this result is in accord with every other circumstance in which the commissioner awards attorney's fees, as there is also no statutorily prescribed due date for those payments.[21]

The decision of the review board is reversed and the case is remanded with direction to affirm the commissioner's decision.

In this opinion the other justices concurred.

---

[21] In this regard, we note that, although the commissioner has promulgated regulations setting forth a due date for the payment of doctor's bills; see footnote 18 of this opinion; the commissioner has not promulgated a similar provision regarding attorney's fees. Finally, we appreciate that an attorney plays an important role in ensuring that a claimant receives the *full* measure of any compensation owed, including penalties owed for late payments of benefits. Although the resolution of a penalty claim is likely to be a pro forma matter, in many instances, an injured claimant will not seek a penalty pursuant to § 31-303 without the assistance of the attorney on whom the claimant has relied throughout the benefits process. With that in mind, we note that an attorney who petitions on behalf of a claimant, pursuant to § 31-303, for penalties due to late payments of compensation may request additional reasonable fees from the commissioner pursuant to § 31-300.